STEWART HARVEY *v*. TOWN OF PEACHAM.

*Soldier's Bounty. Desertion. Drafted Men. Statute.*
(*Acts of* 1864, *No.* 6, § 3.)

Where a man was duly drafted and notified thereof, and when and where to appear in response thereto, if he purposely neglected to report as ordered, it was *held* that he "deserted the service," within the purpose and meaning of the statute of 1864, No. 6, section 3, hence not entitled to maintain an action for a town bounty.
·The common law courts of this state have original and plenary jurisdiction of the question of desertion, when raised in defense to an action for bounty.
The plaintiff was duly drafted and notified thereof, and when and where to appear in response thereto, but purposely neglected to report on the day ordered, and in the evening of that day was duly arrested and the next morning taken to the proper office ; was examined and accepted as a soldier; was kept in arrest and sent forward under charges for desertion in accordance with the regulations in such cases, but no further action was taken upon them, and he was assigned to duty and served regularly with his regiment until discharged. *Held* that, in failing to report as aforesaid, he was a deserter within the meaning of the act of 1864, and therefore not entitled to recover a bounty which the defendant town had voted to drafted men.

ASSUMPSIT to recover a town bounty of three hundred dollars. Plea, the general issue. Trial by jury, June term, 1867, Caledonia county, STEELE, J., presiding.

It was proved that the defendant town had voted a bounty for drafted men who passed to its credit ; that the plaintiff was drafted in the town of Peacham and passed to its credit, and was entitled to the bounty claimed, unless he had forfeited his claim by desertion. It appeared that the plaintiff was duly notified that he was drafted, and when and where to appear in response thereto ; that he neglected to report on the day ordered ; that on the evening of that day he was arrested at Peacham, and the following morning taken by a deputy provost marshal to the provost marshal's office at Windsor, Vt., examined and accepted as a soldier, and then committed to prison, where he was kept for ten days, when he with other recruits was forwarded to the draft rendezvous at New Haven, Conn., and thence to the front ; that he served with his regiment until the war closed, and was then mustered out ; that he was drafted on the 21st day of March, 1865, and was assigned to company K, 5th regiment Vermont volunteers, and was dis-

charged on the 29th day of June, 1865 ; that charges were pre-
ferred against the plaintiff as a deserter by the provost marshal of
the district in which was the town of Peacham, where the plaintiff
resided, in accordance with the regulations and custom of the War
Department in all cases of such neglect to report ; that a copy of
the charge and specifications was forwarded to New Haven with
the plaintiff to the proper officer there as required by the regula-
tions, and although no further proceedings were had upon them,
the defendants' testimony tended to show that the plaintiff was lia-
ble to punishment under the act of Congress, which provided that
any drafted man who should fail to report as ordered should be
deemed a deserter.   There was other evidence tending to show
that the plaintiff's failure to report was wilful, which is stated in
the opinion of the court.   The defendants insisted that, under the
statute of 1864, the plaintiff could maintain no action for a town
bounty, because he had  " deserted the service."   The court de-
cided that the defendants' evidence did not tend to show any such
unlawful abandonment of the service by the plaintiff as would pre-
vent his recovering a bounty, and ordered a verdict for the plain-
tiff, to which the defendants excepted.

*Bliss N. Davis*, and *T. P. Redfield*, for the defendants.

The plaintiff's right of recovery depends upon the Act of 1863,
p. 4.   By the provision of the Act of 1864 the legislature declared
that no action shall be sustained by a soldier for such bounty or
pay when said soldier has deserted the service.   (Acts of 1864,
§ 3, p. 26.)   What constitutes a desertion is left for the United
States laws to determine.   By the Act of Congress of March 3d,
1863, section 13, it is declared " that any person failing to report,
after due service of notice that he has been drafted, shall be
deemed a deserter."

Where the law imposes a penalty for an act, a conviction must
first be had before the penalty can be executed, but our act im-
poses no penalty ; that is left to the laws of Congress.   It simply
deprives the soldier of a right of action.   It is like our law de-
priving a party of his right of action to recover for liquor sold
contrary to the provision of the license law, and whoever heard

that there must be a conviction of selling against law before the defense could be made ? Hence the fact of desertion was for the jury to find like any other fact, and so the committee of elections decided in the case of *Delano* v. *Morgan.* In the case of *Hulen* v. *Reilly*, 53 Penn., 112, which was a suit for refusing the plaintiff's vote, the court decided that to deprive the plaintiff of his franchise there must be a trial and conviction, on the ground that the desertion forfeited the franchise, and there must be a conviction before there could be a forfeiture.

*Stewart Harvey, pro se,* maintained that the question whether the plaintiff was a deserter by failing to report was not within the judicial cognizance of the court, but belonged to the general military law of the Federal government. The plaintiff was never a deserter. He was never in the service until mustered in. The intent of the statute of 1864 was to prevent payment being made except for actual service. The plaintiff was not entitled to a bounty until mustered in and credited ; after that he never deserted. The only defense to the claim is something that accrued before the plaintiff's claim accrued. The act of Congress cannot make a man a deserter when he was not such by actual abandonment of the service. It can call certain acts desertion ; cause specifications to be filed, charging him with non-reporting, and call him therefor a deserter ; but all this does not change the thing and make non-reporting desertion. The object of the act was to punish non-reporting, and not to deal with the offender as a deserter *de facto.* The plaintiff was arrested on the very day of which he had the whole to report in. He was not then amenable to the charge of non-reporting. The plaintiff was not a deserter in fact, and to make him technically a deserter there was required the decision of a court martial. *Hulen* v. *Reilly,* 53 Penn., 112.

Argued and decided at the general term, 1868. The following, as the opinion of the majority of the court, was delivered by

BARRETT, J. The court hold that the plaintiff is disentitled to maintain this action because he had " deserted the service," within the purpose and meaning of the statute of 1864, No. 6, section 3.

The statutes of this state do not undertake to define or prescribe what shall constitute such desertion. The statute of 1863, No. 2, confers authority upon the towns " to grant and vote such sums of money as they may judge best, to be paid to those persons who have been or may hereafter be drafted from said towns into the military service of the United States." It is under a vote in pursuance of that authorization that the plaintiff claims the right to maintain this action.

The drafting of men for that service, and all that pertains to the military service of the United States, is provided and prescribed by the laws of Congress, and the rules and regulations of the military departments of the general government. Those laws and rules and regulations are the only source from which to learn what constitute the duty and defaults of the persons drafted. They give the signification, and application, and force of the terms used to characterize the persons drafted into that service, who make default in their duty under such drafting. Under the laws of Congress all the preliminaries and the act of making the draft are pursued and consummated. Up to this point no specific requirement or active duty is imposed upon such persons by the law. But when they shall have been notified, according to the provisions of the law, that they have been thus drafted, then the law imposes on them specific active duties. They are then fully within the behests of the law, for the military service of the United States. The Act of Congress, March 3, 1863, section 12, provides " that the persons so drawn shall be notified within ten days, requiring them to appear at a designated rendezvous to report for duty." Section 16 provides "that all drafted persons reporting at the place of rendezvous shall be allowed travelling pay from their places of residence ; and all expenses connected with the enrolment and draft, including subsistence while at the rendezvous, shall be paid from the appropriation for enrolling and drafting under such regulations as the President of the United States shall prescribe," etc. Section 7 provides " that it shall be the duty of the provost marshal to arrest all deserters, whether regulars, volunteers, militia men, or *persons called into the service under this or any other Act of Congress, wherever they may be found*, and to

send them to the nearest military commander, or military post," etc. Section 13 provides " that any person failing to report after due notice, as herein prescribed, shall be deemed a deserter and shall be arrested by the provost marshal and sent to the nearest military post for trial by court martial," etc.

In the light of these provisions it would seem plain that a person, on being drafted and notified as provided by law, would, on the day he was required to report himself, be in the military service of the United States. The government then assumes the expense of his trial and subsistence ; makes an absolute requirement upon him under the military law ; subjects him to arrest if he fails to comply ; provides that he shall be sent to a military post to be tried by a military tribunal, according to the martial code, and exposed to the penalties which that code visits upon *deserters.*

The bill of exceptions states that the plaintiff, as a witness on his own behalf, testified to being notified by a deputy provost marshal that he was drafted in the town of Peacham ; that he neglected to report on the day ordered, and that on the evening of that day he was called on in Peacham by the said deputy provost marshal, and by the next train, which was on the morning of the following day, he was taken to the provost marshal's office in Windsor, examined and accepted as a soldier, etc.

From the evidence on the part of the defense, it appeared that all the facts existed which rendered the plaintiff fully subject to being *deemed a deserter*, under said thirteenth section of the act of Congress, and that he was arrested as such, and as such was kept under arrest some ten days, at Windsor, and was then sent forward to the proper officers, at New Haven, Conn., with a copy of charges and specifications, as required by the laws and regulations governing in such cases. Upon these facts, had the plaintiff " deserted the service " within the meaning of the third section of our act of 1864 ? It seems to a majority of the court that he had. From the parts of the act of Congress above referred to, it seems clear that he was as much a deserter as if he had left his regiment after being mustered in, and gone into the field, and as much a *deserter from the service.* The idea of the law of Congress, and of those by whom it was actively administered, was,

not that the acceptance by the examining board constituted the commencement of service as a soldier under the draft, but that the service commenced when he started for the rendezvous, according to the notice and order, and the fact of not being accepted was a discharge from that service. This idea is clearly manifested in the provision of the law for the payment of the expenses of travel and subsistence, not only of those accepted, but of those not accepted, who were therefore discharged. Though it was not brought to the attention of the court, on the argument of this cause, still it may not be unedifying to bring out, in this connection, the view taken of this subject by a very eminent military authority, sustained by the concurring opinion of an equally eminent civilian and jurist. It was promulgated by nine successive weekly publications, in the *Army and Navy Official Gazette*, a paper issued by the authority of the War department:

"[Circular No. 47.]

" WAR DEPARTMENT,
" PROVOST MARSHAL GENERAL'S OFFICE,
" Washington, D. C., July 17, 1863.

" I. Drafted men become soldiers in the service of the United States by the fact of their names having been drawn in the draft. The notification, served upon them by the Provost Marshal, is merely an announcement of the fact, and an order for them to report for duty, at a designated time and place.

" II. The following opinion of the Hon. William Whiting, Solicitor of the War Department, is published for the information of all concerned:

" ' When a person has been drafted, in pursuance of the Enrolment Act of March 3, 1863, notice of such draft must be served on him within ten days thereafter, by a written or printed notice, to be served on him personally, or by leaving a copy at his last place of residence, requiring him to appear at a designated rendezvous, to report for duty. Any person failing to report for duty, after notice left at his last place of residence, or served on him personally, without furnishing a substitute or paying $300, is pronounced by law to be a deserter; he may be arrested and held for trial by court-martial, and sentenced to death.

" ' WILLIAM WHITING, ·
" ' *Solicitor of the War Department.*'
" JAMES B. FRY,
" *Provost Marshal General.*"

It thus would seem to be beyond any reason for doubt that the plaintiff, under the law of Congress, was *in the service* to every intent necessary to give him the full character of a deserter, and that, by an overt act against the military authority to which he was subject as a drafted soldier, he deserted that service. Moreover, he fell literally within the expression of our statute of 1863, section 1, viz.: "Drafted from said town into the military service of the United States." It would seem unquestionable that the term "*service*" in the expression in section 3 of the act of 1864, "who has deserted the service," means the same thing as in said act of 1863. It seems to me too plain to be argued, that our legislature, in making both of those statutes, used the language, and made the provisions of them with reference to the language and provisions, the true intent and meaning of the laws of Congress as to the same subject matters. There was nothing else to which they could have had reference. This is so upon familiar principles of statutory construction. It seems to us, also, that it must be so held upon the known policy and purpose of our legislature in authorizing towns to vote and pay bounties to drafted men, as well as to volunteers. That policy and purpose were to encourage drafted men to respond to the draft, made according to the laws of Congress, and become soldiers, for the common weal, without the exercise of forcible compulsion, placing them on the same footing as volunteers, and thus giving them equal inducement to go cheerfully, and to serve faithfully, instead of subjecting themselves, as did the plaintiff, in the outset, and before going to the rendezvous, to arrest, and conviction, and death as a deserter, without ever having gone to the front, or done a moment of useful service. The object was not to make an undeserved gratuity to one who, when drafted and notified according to law, instead of going to rendezvous at the fixed time, "deliberately remained at home," having previously "said repeatedly that he should pay no attention to the notice or order, and announced that 'Old Abe and all his imps could not make him respond to the draft,' and used other shallow expressions to the same effect," and rendered it necessary forcibly to arrest him and proceed with him in the manner fully stated in the bill of exceptions.

The fact that he came within the literal terms of the vote of the town under which he claims the bounty, and was accounted to the credit of the town towards its quota, does not vary the *status* of the plaintiff under our statute of 1864. If he had deserted from the field he would have been accounted towards the quota the same as if he had remained faithful and true. Yet I suppose that no one would claim, in the latter case, that he could have maintained his action for the bounty. The statute excludes him from the benefit of the provisions authorizing the towns to vote bounties, and from availing himself of the vote of the town in pursuance of such authorization. The defect of right in this case results from the fact that he " deserted the service."

A point was made in the argument, that in order for the defense to be maintained in this case, the fact of desertion should be proved only by a record of conviction by court martial. There is no provision in any statute to this effect. This defense is not in the nature of a suit or prosecution against the plaintiff for the violation of the law, in which a conviction would be followed by a pecuniary or other penalty. The operation of the defense is not to deprive him of any common or special right as a citizen, in the nature of a forfeiture of any privilege as a citizen. He comes into court to enforce by action a claim depending on a special public statute. The defense goes only to the extent of showing that he is not one of the class of persons for whose benefit the statute was made; that in fact he never had any right in virtue of it.

It is obvious, moreover, that it could not have been intended that the fact of desertion under that statute must be shown by a record of conviction, or by a conviction in any manner— for cases were not unfrequent of deserters making effectual escape, and eluding the authorities of the law till after the war was over, and all interest and effort, and all means too, for their arrest and trial had subsided and passed away. There is a class of cases, one of which is cited *Hulen* v. *Reilly*, 53 Penn., 112, to the effect that in order to visit a forfeiture of the constitutional right and privilege to vote, upon a person by reason of being a deserter, the fact of desertion must be established by the adjudication of a court of

competent jurisdiction, and that an election board is not such court.

The present is a very different case. As before suggested, in this case the plaintiff claims under a special statute, and a special vote of the town. The defense is, that upon the facts shown, he is, by the terms of the statute, precluded from maintaining by action the claim he makes. The court in which the plaintiff asserts his claim has ample jurisdiction to entertain the defense and adjudicate it under the law appertaining to the subject upon the original evidence and facts proved thereby bearing upon the question whether the plaintiff had deserted the service. In other words, the common law courts of this state have original and plenary jurisdiction of the question of desertion, when raised in defense to such a suit as this.

The majority of the court feel great confidence in the correctness of the result at which they have arrived, and do not disguise the comfort they feel in being able, upon plain and solid principles of the law, to do something, though it be in seemingly inadequate measure, in the direction of legal justice and moral decency as between the parties to this suit.